UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ANDREA O'BRIEN,<br><br>　　　　　　Defendant. | Case No. 4:24-cr-00197-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Andrea O'Brien's Motion to Suppress. Dkt. 17. On March 4, 2025, the Court held an evidentiary hearing and took the Motion under advisement. For the reasons outlined below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

On June 2, 2024, law enforcement was conducting surveillance of a house known to be used for drug transactions. During surveillance, Sergeant Matt Shutes of the Pocatello Police Department observed a red Ford Fusion, driven by Andrea O'Brien, leave the house. Officers followed the vehicle, and Sergeant Shutes observed the vehicle exit an alleyway without using a turn signal. Because Sergeant Shutes was in an unmarked vehicle at the time, he radioed the traffic violation to Corporal Card.

Prior to the initiation of the traffic stop, Sergeant Shutes requested a canine unit report to conduct a sniff around the vehicle during the stop. Corporal Card initiated the traffic stop, and shortly thereafter Corporal Seamons, the canine handler, arrived at the scene and conducted a free air sniff with his canine partner. Corporal Card was still processing the traffic violation when the canine alerted to the presence of narcotics. From the time the stop was initiated to the time the canine alerted, nine minutes had passed. Upon further investigation, a search revealed methamphetamine and a firearm in the vehicle, leading to charges of drug trafficking and unlawful possession of a firearm against O'Brien. O'Brien filed a motion to suppress the evidence, arguing that the traffic stop was unlawfully extended to conduct the canine sniff, violating her Fourth Amendment rights.

### III. LEGAL STANDARDS

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Mapp v. Ohio*, 367 U.S. 643, 646 n.4 (1961) (quoting U.S. Const. amend. IV). Generally, searches and seizures conducted without a warrant are "*per se* unreasonable under the Fourth Amendment" subject to "a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up).

One such exception to the warrant requirement that is pertinent to this case is a seizure for a traffic violation. *Rodriquez v. United States,* 575 U.S. 348, 354 (2015). Such a seizure is only justified if the officer diligently pursues the purpose of the stop; any deviations or delays for unrelated investigations violate the driver's Fourth Amendment

rights, unless the reason for the delay is supported by independent reasonable suspicion. *Id*. at 354–55.

Additionally, the automobile exception to the warrant requirement permits police to search a vehicle when the car is "readily mobile" and "probable cause exists to believe it contains contraband." *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (cleaned up). The police may search both an automobile and the containers within it "where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).

If no exceptions apply, any subsequently found evidence must be suppressed under the exclusionary rule. Evidence that the government obtains in violation of the Fourth Amendment, as well as the fruit of that evidence, is generally excluded from the prosecution of the alleged violator. *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963). Further, evidence discovered through "exploitation of" an illegal search or seizure, must also be suppressed as "fruit of the poisonous tree." *Id*. at 488.

## IV. DISCUSSION

O'Brien argues officers did not have reasonable suspicion to initiate a traffic stop and then deviated from the purpose of the traffic stop—which was to investigate and cite O'Brien for her failure to signal when turning out of an alleyway—when they decided to pursue an independent drug investigation. In particular, she argues that Corporal Card delayed issuing a citation in order to allow time for the dog sniff. She further argues that Corporal Card neither had reasonable suspicion to justify the deviation from the purpose of the traffic stop nor justification for the dog sniff. Considering these suggested

shortcomings, O'Brien concludes that all resulting evidence against her must be suppressed. The Court will address each issue below.

### A. Initial Traffic Stop

A traffic violation alone is sufficient to establish reasonable suspicion to justify a stop. *Whren v. United States,* 517 U.S. 806, 810 (1996); *United States v. Willis,* 431 F.3d 709, 714–17 (9th Cir.2005). In *Whren,* the Court held that, in general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810; *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). Here, Sergeant Shutes had reasonable suspicion to believe O'Brien violated traffic laws by exiting an alleyway without using a turn signal. Idaho Code § 49-808 provides that:

> (2) A signal of intention to turn or move right or left when required shall be given continuously to warn other traffic. On controlled-access highways and **before turning from a parked position**, the signal shall be given continuously for not less than five (5) seconds and, in all other instances, for not less than the last one hundred (100) feet traveled by the vehicle before turning.

Sergeant Shutes was in an unmarked vehicle when he observed the traffic violation. He requested that Corporal Card initiate the traffic stop because he was in a marked police vehicle. The collective knowledge doctrine allows an officer to gather information from various sources—bulletins, dispatch, fellow officers, and so forth—to support a finding of probable cause. *State v. Bell*, 533 P.3d 1247, 1252 (Idaho 2023). Therefore, the initial traffic stop was reasonable and a permissible seizure under the Fourth Amendment.

### B. The Delay

MEMORANDUM DECISION AND ORDER - 4

The primary issue in this case is whether Corporal Card delayed O'Brien's traffic stop by acting outside of the purpose of the stop's mission. If the Court finds there was such a delay, it must determine if the delay was justified by a reasonable suspicion of drug activity.

A traffic stop may not be prolonged beyond the time reasonably required to complete its mission, unless there is independent reasonable suspicion of an additional offense. Any unrelated checks or investigations that add time to the stop are unlawful without such reasonable suspicion. *United States v. Diaz-Sanchez*, 693 F.Supp.3d 1094, 1102 (9th Cir. 2023).

For an officer to extend a traffic stop to investigate matters unrelated to the original traffic violation, there must be reasonable suspicion of an independent offense. This means the officer must be aware of specific, articulable facts that justify the additional investigation. *United States v. Mati*, 466 F.Supp.3d 1046, 1059 (9th Cir. 2020). Sergeant Shutes testified that he contacted Corporal Seamons and requested a dog sniff prior to Officer Card initiating the traffic stop.[1] Officer Seamons and his K-9, Bruce, arrived at the scene at 12:40 a.m. Approximately six minutes lapsed between the time the traffic stop was initiated and the arrival of Officer Seamons with K-9 Bruce. The canine alerted on the vehicle at 12:43 a.m. Dkt. 23-1, at 1. Corporal Card had not completed his mission of the traffic stop, as he was still gaining information from dispatch and writing the traffic ticket. The traffic stop was delayed, not by the canine sniff, but because O'Brien did not have a

---

[1] The traffic stop was initiated at 12:34 a.m. Dkt. 23-1, at 1.

MEMORANDUM DECISION AND ORDER - 5

driver's license or any form of identification on her. This required Corporal Card to take the time to verify her identity through the police database. Corporal Card gave dispatch O'Brien's name and asked that dispatch send him a photograph of O'Brien to verify her identity. Nine minutes from initial stop to the alert under these circumstances is not an improperly extended stop. Once the canine alerted on the vehicle, the officers at the scene had reasonable suspicion to search the vehicle and deviate from the original mission of the stop.

"A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes,* 543 U.S. 405, 410 (2005). And when a canine sniff indicates a vehicle contains narcotics, then probable cause is established to search the vehicle. *See United States v. Lingenfelter,* 997 F.2d 632, 639 (9th Cir.1993); *United States v. Aguirre,* 2013 WL 4039791, at *3 (D. Idaho Aug. 7, 2013). Therefore, O'Brien's Fourth Amendment rights were not violated by the dog sniff and subsequent search of the vehicle.

## IV. ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant Andrea O'Brien's Motion to Suppress (Dkt. 17) is DENIED.

DATED: April 18, 2025

David C. Nye
Chief U.S. District Court Judge